United States District Court
Southern District of Texas
**ENTERED**
December 07, 2015
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| SHEIKH M. RAFIQ, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-15-2210 |
| | § | |
| MANUEL LOPEZ, et al., | § | |
| | § | |
| Defendants. | § | |

### MEMORANDUM AND RECOMMENDATION

Pending before the court[1] are Plaintiff's Motion for Temporary Restraining Order ("TRO") (Doc. 2), Defendant Nueva Vida Apartments' ("Nueva Vida") Motion to Remand (Doc. 14), Defendants' Federal Rules of Civil Procedure ("Rules") 12(b)(1), 12(b)(6), and 12(e) Motions (Doc. 15), and Plaintiff's Motion for Continuance (Doc. 22). The court has considered the motions, Plaintiff's response to Defendant Nueva Vida's motion, and the applicable law. For the reasons set forth below, the court **RECOMMENDS** that Plaintiff's TRO motion be **DENIED**, Defendant Nueva Vida's motion to remand be **GRANTED,** Defendants' Rule 12(b)(1) motion be **DENIED**, Defendants' Rule 12(b)(6) motion be **GRANTED IN PART AND DENIED IN PART**, and Defendants' Rule 12(e) motion be **DENIED AS MOOT**. Plaintiff's motion for continuance is **DENIED**.

---

[1]  This case was referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), the Cost and Delay Reduction Plan under the Civil Justice Reform Act, and Federal Rule of Civil Procedure 72. See Doc. 5.

## I.  Case Background

Plaintiff filed this discrimination and defamation lawsuit under the Fair Housing Act[2] ("FHA") against the apartment complex where he lived for almost seven years, the presumed owner[3] of the complex, the complex manager, and the presumed owner[4] and/or chief executive officer of the management company.[5]

### A.  Allegations in the Federal Discrimination Action

Plaintiff, who was seventy-one years old at the time he filed this suit, is disabled due to heart disease, blindness, and neuromuscular atrophy.[6] Defendant Nueva Vida is a housing complex for senior citizens subsidized by the U.S. Department of Housing and Urban Development ("HUD").[7] Defendant Manuel Lopez ("Lopez"), along with partners, allegedly owns Nueva Vida and the Tejano Center for Community Concern, Inc., ("Tejano Center"), which is

---

[2]     42 U.S.C. §§ 3601-31.

[3]     Defendant Manuel Lopez denied ownership of Nueva Vida. See Doc. 15, Defs.' Fed. R. Civ. P. 12(b)(1), 12(b)(6), & 12(e) Mots. & Original Answer Filed Subject to Same p. 1.

[4]     Defendant Kenneth Tann denied ownership of MMM Housing, Management, Inc. See id.

[5]     See Doc. 1, Pl.'s Original Compl. pp. 1-2, 3. Plaintiff refiled his complaint on August 7, 2015, with typewritten corrections but no substantive changes. See Doc. 7, Pl.'s (Am.) Original Compl.

[6]     Id. p. 2

[7]     Id. p. 3.

located near Nueva Vida.[8]  HUD pays Plaintiff's rent.[9]

The allegations in Plaintiff's complaint lack factual detail.
Plaintiff alleged that, beginning in May 2014 and continuing
through the date on which he filed this action, Defendants
"continued to abuse the Plaintiff" and "exploited Plaintiff's
disabilities."[10]  Plaintiff averred that Defendants were trying to
render him homeless "out of racial slur and bias" without
identifying the individual who expressed the slur and bias or any
discriminatory comment or action.[11]

Plaintiff complained that a man named "Rouise,"[12] who was "an
unauthorized handy/maintenance man" in 2014, and Defendant Dolores
Sanchez ("Sanchez") were "hostile towards Plaintiff."[13]  Plaintiff
accused Defendants of "set[ting] Medrano[14] and Rouise at Plaintiff"

---

[8]    Id.; Def. Lopez also denied ownership of the Tejano Center.  See
Defs.' Fed. R. Civ. P. 12(b)(1), 12(b)(6), & 12(e) Mots. & Original Answer Filed
Subject to Same p. 1.

[9]    See Doc. 7, Pl.'s (Am.) Original Compl. p. 1.

[10]   Id. pp. 1, 2.

[11]   Id. p. 8.

[12]    Plaintiff indicated that he did not know the last name of "Rouise."
See id. p. 4.

[13]    Id.  In his HUD complaint, Plaintiff claimed that Rouise told
Plaintiff that he "should not be here."  Doc. 19, Pl.'s Mot. for
Continuance/Demand for Ct.-Appointed Att'y, Pl.'s Preliminary (1st) Answer to
Def.'s Mot. to Remand & Pl.'s Mot. for Recusal, Ex. F, Housing Discrimination
Compl. Dated Apr. 7, 2015 p. 2.  Plaintiff said that he felt Rouise was referring
to Plaintiff's ethnicity.  See id.  The court complaint contained no such
allegation.  Regardless, the statement does not suggest bias based on any
protected category.

[14]    The court is unable to determine from the face of the complaint who
"Medrano" was.

and "disturb[ing] Plaintiff's peace and harass[ing] the Plaintiff."[15]   On at least two occasions, Plaintiff called 911 to request police assistance because he feared for his safety.[16]

Plaintiff suffered a mild heart attack resulting from the "stress and depression" caused by Defendants.[17]   Defendants posted a sign at the entry gate prohibiting vehicles larger than an F-350 truck from entering the property, which prohibited METROLift vans for the disabled from entering the property to pick up Plaintiff.[18] Plaintiff said that, as a result, he once fell in a ditch outside the apartment complex.[19]   Plaintiff claimed that, on one occasion, the assistant manager of Nueva Vida slammed the management office door in his face, hitting his nose.[20]   Plaintiff called 911, but the officers only mediated and left.[21]

Plaintiff also complained that Defendants' "improper behavior" caused Plaintiff to have to reschedule doctor appointments and that Defendants did not allow residents to spread their linens outside

---

[15]    Doc. 7, Pl.'s (Am.) Original Compl. p. 4.

[16]    See id. pp. 4, 5.

[17]    Id. p. 6.

[18]    See id. p. 7; see also Doc. 19, Pl.'s Mot. for Continuance/Demand for Ct.-Appointed Att'y, Pl.'s Preliminary (1st) Answer to Def.'s Mot. to Remand & Pl.'s Mot. for Recusal, Ex. F, Housing Discrimination Compl. Dated Apr. 7, 2015 p. 2.

[19]    See Doc. 7, Pl.'s (Am.) Original Compl. p. 7.

[20]    See id.

[21]    See id.

to air.[22]   According to Plaintiff, Defendants failed to make necessary repairs to Plaintiff's sewage and shower.[23]   Without providing detail, Plaintiff alleged that Defendants violated the privacy of the elderly residents.[24]  He accused Defendant Sanchez of manipulating facts to displace blame onto Plaintiff.[25]  Plaintiff included several pejorative comments about the other residents of Nueva Vida, including that the vast majority were "Hispanics/Tejanos/Latinos" who would not "witness" against the Hispanic defendants.[26]

Plaintiff filed his first housing discrimination complaint with HUD in May or June 2014.[27]   When the HUD representative questioned Defendants about Plaintiff's complaints, Defendants stated that they would terminate Plaintiff's lease and evict him.[28] In June and September 2014, Defendants "started harassing the Plaintiff by putting threatening letters/envelopes with scotch tape

---

[22]   See id. p. 6.

[23]   See id.

[24]   See id. p. 7.   In another paragraph of the complaint, Plaintiff stated that Defendant Sanchez visited or inspected the residents' apartments and then teased them.  See id. p. 8. Perhaps that is what Plaintiff considered to be invasion of privacy.

[25]   See id. p. 4.

[26]   Id. p. 7.

[27]   Id. p. 2.

[28]   Id. p. 6.

on his doorstep" that threatened eviction."[29]  In December 2014, Defendants initiated an eviction proceeding against Plaintiff before a local justice of the peace.[30]

In addition to alleging discrimination based on race, national origin, disability, and religion under the FHA, Plaintiff asserted the following: retaliation, estoppel, "laches waivers," failure to mitigate damages, acceptance of payment, failure of Defendants to maintain premises, and failure to perform all conditions precedent.[31]  Plaintiff also accused Defendants of "finger-pointing and mud-slinging on the integrity of the Plaintiff, whereas the Plaintiff has clear record and has super credibility."[32]

Plaintiff seeks $500,000 in damages, as well as Plaintiff's expenses, court costs, and attorneys' fees.[33]  He also requests, another HUD investigation undertaken in collaboration with Plaintiff,[34] a restraining order to prevent eviction, police protection, and an order that Defendant Sanchez improve her behavior, be respectful to Plaintiff, cooperate with him, and get

---

[29]    Id. p. 5.

[30]    See id. p. 6.

[31]    Id. pp. 5, 6.

[32]    Id. p. 2.

[33]    See id. p. 9.

[34]    Plaintiff complained that the HUD investigator assigned to his discrimination complaints "did not want to work hard," was lenient, "was inefficient," and "did not know what to do." Id. p. 2.

him a bigger place to live.[35]

**B.   Procedural History of the Federal Discrimination Action**

When Plaintiff initially filed his complaint in July 2015, he also filed a motion for TRO to prevent his eviction.[36]  On August 28, 2015, Plaintiff removed the state-court eviction proceeding from the Harris County Civil Court at Law No. 3 to this court.[37] Within a week of removal, Defendant Nueva Vida filed a motion to remand.[38]  On September 4, 2015, Defendants jointly filed an answer to Plaintiff's complaint and included motions filed pursuant to Rules 12(b)(1), 12(b)(6), and 12(e).[39]

On September 16, 2015, the court held a hearing on Plaintiff's TRO motion.[40]   After some discussion, the court continued the hearing at Plaintiff's request and issued an order the following day.[41]  The order stated that the Plaintiff's complaint did not contain sufficient detail from which the court could determine

---

[35]    See id. p. 9.

[36]    See Doc. 2, Pl.'s Mot. for TRO.

[37]    See Doc. 11, Pl.'s Notice of Removal.

[38]    See Doc. 14, Def. Nueva Vida's Mot. to Remand.

[39]    See Doc. 15, Defs.' Fed. R. Civ. P. 12(b)(1), 12(b)(6), & 12(e) Mots. & Original Answer Filed Subject to Same.

[40]    See Doc. 17, Min. Entry Dated Sept. 16, 2015.

[41]    See id.; Doc. 18, Order Dated Sept. 17, 2015.

whether the exercise of subject matter jurisdiction was proper.[42]

The court ordered Plaintiff to "file a short, plain averment of each act of each Defendant that [Plaintiff] believes states a claim for discrimination under the Fair Housing Act."[43]  The court explained that it would not set a hearing on the TRO motion until it made the determination on subject matter jurisdiction.[44]  At that time, Plaintiff had not yet responded to Defendant Nueva Vida's motion to remand, and the court extended the deadline for Plaintiff's response to September 28, 2015.[45]

On September 28, 2015, Plaintiff filed his so-called Motion for Continuance/Demand for Court-Appointed U.S. Attorney, Plaintiff's Preliminary (First) Answer to Defendant's Motion to Remand and Plaintiff's Motion for Recusal.[46]  In the portion responding to Defendant Nueva Vida's motion to remand, Plaintiff argued that the case is a housing discrimination case (and, presumably, within the court's subject matter jurisdiction) because HUD and this court accepted Plaintiff's complaints as asserting housing discrimination.[47]  A few days later, the court granted the

---

[42]    See Doc. 18, Order Dated Sept. 17, 2015 p. 1.

[43]    Id. p. 6.

[44]    Id.

[45]    See id. p. 7.

[46]    See Doc. 19, Pl.'s Mot. for Continuance/Demand for Ct.-Appointed Att'y, Pl.'s Preliminary (1st) Answer to Def.'s Mot. to Remand & Pl.'s Mot. for Recusal.  This document is also filed at Doc. 20.

[47]    See id. p. 4.

motion for continuance and denied the motions for appointment of counsel and for recusal.[48]   The court suggested that it might reconsider the appointment of counsel after Plaintiff repled his allegations to allow the court to determine jurisdiction.[49]   In connection therewith, the court also reiterated its prior order that Plaintiff replead the allegations in his complaint, allowing him until October 19, 2015, to do so.[50]

On October 19, 2015, Plaintiff filed his response to Defendant Nueva Vida's motion to remand.[51]   In addition to responding to the motion to remand, Plaintiff argued that his original complaint was sufficiently specific and contained "all the data," as well as excerpts from the FHA.[52]   He did not replead his complaint as ordered by the court, but he did complain about the court's assisting Plaintiff in serving Defendants and did ask the court to continue the case until Plaintiff was provided a court-appointed attorney.[53]

## C.   Procedural Background of Eviction Proceeding

On December 11, 2014, Defendant Nueva Vida filed its complaint

---

[48]   See Doc. 21, Order Dated Oct. 5, 2015.

[49]   See id. pp. 1-2.

[50]   See id. p. 2.

[51]   See Doc. 22, Pl.'s Brief Resp. to Def. Nueva Vida's Mot. to Remand, Pl.'s Demand for Ct.-Appointed Att'y, Pl.'s Resp. to Amend his Original Pet./Compl., Considerations for Mag. J.

[52]   Id. p. 4.

[53]   See id. pp. 4-5.

seeking forcible entry and detainer ("eviction") against Plaintiff in the Justice Court of Harris County.[54]   The trial was held on December 29, 2014; a judgment in favor of Defendant Nueva Vida, the plaintiff in the eviction proceeding, was entered, awarding Nueva Vida possession of the apartment.[55]

Plaintiff immediately appealed the decision to Harris County Civil Court at Law Number Three.[56]   Prior to trial there, the parties entered into an agreement to postpone the trial until after August 31, 2015, in exchange for Plaintiff's promise to vacate the apartment by that date.[57]

Instead of vacating the property, Plaintiff filed this federal discrimination action and removed the eviction proceeding to this court.[58]   The notice of removal was filed nearly eight months after Plaintiff's appeal of the Justice Court's eviction decision was perfected.[59]

## II. Discussion

The pending motions are intertwined.   The court begins by answering its own question about subject matter jurisdiction over

---

[54]   See Doc. 7, Pl.'s (Am.) Original Compl. p. 8; Doc. 14, Def. Nueva Vida's Mot. to Remand pp. 1-2.

[55]   See Doc. 7, Pl.'s (Am.) Original Compl. p. 8; Doc. 14, Def. Nueva Vida's Mot. to Remand p. 2.

[56]   See Doc. 14, Def. Nueva Vida's Mot. to Remand p. 2.

[57]   See id.

[58]   See id.

[59]   See id.

the federal discrimination claim.  In the discussion of that issue, the court also resolves Defendants' Rules 12(b)(1), 12(b)(6), and 12(e) motions.  The court then moves to Defendant Nueva Vida's motion to remand and concludes with Plaintiff's TRO motion.

## A.  <u>Subject Matter Jurisdiction</u>

Pursuant to the Rules, dismissal of an action is appropriate whenever the court lacks subject matter jurisdiction.  Fed. R. Civ. P. 12(b)(1), 12(h)(3).  The party asserting jurisdiction bears the burden of proof that jurisdiction does exist.  <u>Ramming v. United States</u>, 281 F.3d 158, 161 (5th Cir. 2001).  The court may exercise jurisdiction over "civil actions arising under the Constitution, laws, or treaties of the United States" and over actions between citizens of different states when more than $75,000 is in controversy.  <u>See</u> 28 U.S.C §§ 1331, 1332.  The court may also exercise supplemental jurisdiction over claims brought under state law if they "form part of the same case or controversy" as the action over which the court has original jurisdiction.  28 U.S.C. § 1367.

Dismissal of an action is also appropriate whenever the complaint, on its face, fails "to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  A complaint need not contain "detailed factual allegations" but must include sufficient facts to indicate the plausibility of the claims asserted, raising the "right to relief above the speculative level."  <u>Bell Atl. Corp.</u>

11

v. Twombly, 550 U.S. 544, 555 (2007); see also Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Plausibility means that the factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. A plaintiff must provide "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Twombly, 550 U.S. at 555. In other words, the factual allegations must allow for an inference of "more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678.

As Plaintiff did not comply with the court's orders to replead, the court is left to examine his live pleading to determine whether a basis for subject matter jurisdiction exists. Plaintiff purports to raise claims of discrimination under the FHA and defamation under state law. The court must look to see if Plaintiff's complaint contains sufficient facts to raise the inference that Defendants are liable for discrimination and/or defamation.

Among other protections, the FHA prohibits discrimination in the sale or rental of housing "to any person because of race, color, religion, sex, familial status, or national origin." 42 U.S.C. § 3604. The FHA also prohibits discrimination in the sale or rental of a dwelling based on handicap or discrimination "in the terms, conditions, or privileges of sale or rental of a dwelling,

12

or in the provision of services or facilities in connection with [a] dwelling" based on handicap.  <u>See</u> 42 U.S.C. § 3604(f).  This includes refusing "to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling."  42 U.S.C. § 3604(f)(3)(B).  It is also unlawful to retaliate against an individual on account of his exercising any right granted by the FHA.  <u>See</u> 42 U.S.C. § 3617.

To prove defamation, a plaintiff must demonstrate that the defendant published a false statement about him to a third party without legal excuse, damaging the plaintiff's reputation.  <u>Fiber Sys. Int'l, Inc. v. Roehrs</u>, 470 F.3d 1150, 1161 (5th Cir. 2006)(applying Texas law).  The court decides whether the alleged statement has a defamatory meaning by determining whether it "tends to injure the person's reputation and thereby expose the person to public hatred, contempt or ridicule, or financial injury, or to impeach that person's honesty, integrity, or virtue."  <u>Abbott v. Pollock</u>, 946 S.W.2d 513, 519 (Tex. App.–Austin 1997, writ denied).

Reading Plaintiff's pleading as broadly as possible, the court finds two factual allegations that arguably raise FHA claims, but no allegations that satisfy the elements of a defamation claim.  Plaintiff alleged that Defendants prohibited METROLift vans from entering the apartment property.  This prevented Plaintiff from accessing public transportation for the disabled.  Arguably, those

facts are sufficient to state a discrimination claim under FHA against Nueva Vida for discrimination based on disability in the provision of services in connection with Plaintiff's apartment. The only other allegation that raises a colorable claim under the FHA is Plaintiff's assertion that Defendant Nueva Vida retaliated against him by instituting eviction proceedings in response to Plaintiff's filing of discrimination complaints with HUD. Plaintiff's complaint fails to state a claim against any other named defendant.

These FHA claims arise under federal law; thus, the court may exercise subject matter jurisdiction.  Defendants' motion to dismiss for lack of subject matter jurisdiction should be denied. Defendants' motion to dismiss for failure to state a claim should be granted with regard to all of Plaintiff's claims except the above-described FHA discrimination and retaliation claims against Defendant Nueva Vida.

Defendants' motion for a more definite statement is moot.  The court twice ordered Plaintiff to replead his complaint to aver each act of each Defendant that he believed violated the law.  Plaintiff refused to do so and has lost the chance to pursue all claims pled "so vague[ly] or ambiguous[ly] that [Defendants] cannot reasonably prepare a response." Fed. R. of Civ. P. 12(e).

**B.** <u>**Remand**</u>

The Rules allow removal of "any civil action brought in a

State court of which the district courts of the United States have
original jurisdiction." 28 U.S.C. § 1441(a); <u>see also</u> <u>Mumfrey v.</u>
<u>CVS Pharm., Inc.</u>, 719 F.3d 392, 397 (5th Cir. 2013). Absent
original jurisdiction, the district courts lack subject matter
jurisdiction over the removed case. <u>Delgado v. Shell Oil Co.</u>, 231
F.3d 165, 175 (5th Cir. 2000)(citing <u>Avitts v. Amoco Prod. Co.</u>, 53
F.3d 690, 693 (5th Cir. 1995)). Upon the filing of a motion to
remand, the removing party bears the burden of establishing that
the district court has jurisdiction. <u>Mumfrey</u>, 719 F.3d at 397. It
is well settled that, in determining removal jurisdiction, the
court must consider the claims in state court as they existed at
the time of removal. <u>Manguno v. Prudential Prop. & Cas. Ins. Co.</u>,
276 F.3d 720, 723 (5th Cir. 2002)(citing <u>Cavallini v. State Farm</u>
<u>Mut. Auto Ins. Co.</u>, 44 F.3d 256, 264 (5th Cir. 1995)). Federal
question jurisdiction exists only when a federal question is
presented on the face of the plaintiff's well-pled complaint.
<u>Aetna Health Inc. v. Davila</u>, 542 U.S. 200, 207 (2004).

In the present situation, the apartment complex filed the
action against Plaintiff under Texas eviction law. Texas rules
dictate that the only issue allowed in an eviction case is the
"right to actual possession." Tex. R. Civ. P. 510.3(e).
"Counterclaims and the joinder of suits against third parties are
not permitted in eviction cases. A claim that is not asserted
because of this rule can be brought in a separate suit in a court

15

of proper jurisdiction." Id.   Therefore, a defendant may not
create federal jurisdiction by including in his answer a claim
arising under federal law.   See Stump v. Potts, 322 F. App'x 379,
380 (5th Cir. 2009)(unpublished).

        Plaintiff's response exposes his misapprehension of the
removal/remand process.   He suggests that, by raising FHA
discrimination claims in his answer to the eviction petition, he
created a removable action.   This is not so, for at least two
reasons.   First, Texas rules do not allow the joinder of any claim
with the eviction proceeding.   Second, Defendant Nueva Vida's
petition in the state-court action, not Plaintiff's
answer/counterclaim, dictates whether this court has removal
jurisdiction.   Defendant Nueva Vida sued Plaintiff over the right
to actual possession of the apartment in which Plaintiff lived.
That is solely a state-law issue.

        Therefore, this court lacks removal jurisdiction.   Remand of
the eviction action is required.   Defendant Nueva Vida also
contends that removal was untimely as it was filed approximately
eight months after Plaintiff appealed the judgment in favor of
Defendant Nueva Vida.   Although the court finds Defendant Nueva
Vida's argument persuasive, the court need not address that issue
because it lacks jurisdiction over the action regardless of the
timing of removal.

**C.   <u>TRO</u>**

16

The issuance of a TRO is based on the satisfaction of the same four traditional criteria considered for the issuance of a preliminary injunction: "(1) irreparable injury, (2) substantial likelihood of success on the merits, (3) a favorable balance of hardships, and (4) no adverse effect on the public interest." Dennis Melancon, Inc. v. City of New Orleans, 703 F.3d 262, 268 (5th Cir. 2012)(internal alterations omitted)(quoting Black Fire Fighters Ass'n of Dall. v. City of Dall., 905 F.2d 63, 65 (5th Cir. 1990)); see also Clark v. Prichard, 812 F.2d 991, 993 (5th Cir. 1987)(indicating that the four traditional criteria apply to both TROs and preliminary injunctions).

Plaintiff moved for a TRO to prevent his eviction. The court has determined that it lacks subject matter jurisdiction over the eviction action. Thus, before considering whether the above four criteria support the issuance of a TRO, the court must decide whether it should exercise jurisdiction over the matter. The court specifically considers whether abstention under Younger v. Harris, 401 U.S. 37 (1971), is advisable.

Younger abstention applies when: "(1) the federal proceeding would interfere with an ongoing state judicial proceeding; (2) the state has an important interest in regulating the subject matter of the claim; and (3) the plaintiff has an adequate opportunity in the state proceedings to raise constitutional challenges." Bice v. La. Pub. Defender Bd., 677 F.3d 712, 716 (5th Cir. 2012)(internal

17

quotation marks omitted)(quoting <u>Middlesex Cty. Ethics Comm. v. Garden State Bar Ass'n</u>, 457 U.S. 423, 432 (1982)).  The doctrine applies in civil proceedings that implicate state courts' "important interests in administering certain aspects of their judicial systems." <u>Pennzoil Co. v. Texaco, Inc.</u>, 481 U.S. 1, 12-13 (1987).

In this case, the first prong is met because a decision by this court to issue a TRO stopping Plaintiff's eviction would directly interfere with the Justice Court of Harris County's ruling awarding possession of Plaintiff's apartment to Defendant Nueva Vida.  The second prong is also met.  Texas has a strong interest in administering eviction proceedings[60] and an even stronger interest in enforcing judgments of its courts.  <u>See</u> <u>Pennzoil</u>, 481 U.S. at 12-13.  Regarding the third prong, Texas does not permit collateral issues to be raised in an eviction proceeding; regardless, Plaintiff stated no constitutional concern.  Plaintiff may pursue his properly pled federal claims in this court.

For these reasons, the doctrine of <u>Younger</u> abstention directs this court to abstain from exercising jurisdiction over Plaintiff's eviction and from issuing a TRO to prevent his eviction.  He appealed the state court's ruling and may pursue his challenge to eviction before the Harris County Civil Court at Law Number Three.

---

[60]    Texas expressed its interest in eviction proceedings by enacting a set of specific rules governing the process and by limiting the proceedings to only one issue—actual possession of the property.

18

### III.  Conclusion

Based on the foregoing, the court **RECOMMENDS** that Plaintiff's TRO motion be **DENIED**, Defendant Nueva Vida's motion to remand be **GRANTED**, Defendants' Rule 12(b)(1) motion be **DENIED**, Defendants' Rule 12(b)(6) motion be **GRANTED IN PART AND DENIED IN PART**, Defendants' Rule 12(e) motion be **DENIED AS MOOT**.  Plaintiff's motion for continuance is **DENIED**.

The Clerk shall send copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections thereto pursuant to Rule 72(b) and General Order 2002-13.  Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

The original of any written objections shall be filed with the United States District Clerk electronically.  Copies of such objections shall be mailed to opposing parties and to the chambers of the undersigned, 515 Rusk, Suite 7019, Houston, Texas 77002.

**SIGNED** in Houston, Texas, this 7th day of December, 2015.

U.S. MAGISTRATE JUDGE