United States District Court
Southern District of Texas
**ENTERED**
January 03, 2017
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| SHEIKH M. RAFIQ, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-15-2210 |
| | § | |
| MANUEL LOPEZ, et al., | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND RECOMMENDATION

Pending before the court[1] is Defendant Nueva Vida Apartments' ("Nueva Vida Apartments" or "Defendant") Motion for Summary Judgment (Doc. 33). The court has considered the motion and the applicable law. For the reasons set forth below, the court **RECOMMENDS** that Defendant's motion be **GRANTED**.

### I. Case Background

Plaintiff, pro se, filed this discrimination and defamation lawsuit under the Fair Housing Act[2] ("FHA") against the apartment complex where he lived and three individuals associated with Nueva Vida Apartments.[3]

---

[1] This case was referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), the Cost and Delay Reduction Plan under the Civil Justice Reform Act, and Federal Rule of Civil Procedure 72. See Doc. 5.

[2] 42 U.S.C. §§ 3601-3631.

[3] See Doc. 1, Pl.'s Orig. Compl. pp. 1-3. Plaintiff refiled his complaint on August 7, 2015, with typewritten corrections but no substantive changes. See Doc. 7, Pl.'s (Am.) Orig. Compl.

A.  **Factual Background**

Plaintiff, who was seventy-one years old at the time he filed this suit, claimed disability due to heart disease, blindness, and neuromuscular atrophy.[4] Nueva Vida Apartments is a housing complex for senior citizens subsidized by the U.S. Department of Housing and Urban Development ("HUD").[5]

On May 1, 2009, Plaintiff entered into a one-year lease with Nueva Vida Apartments.[6]  After the lease expired, Plaintiff continued living at the apartment on a month-to-month basis.[7] Beginning in June 2014, Nueva Vida Apartments repeatedly cited Plaintiff for "conduct that was in violation of the lease . . . based on written complaints."[8]  Plaintiff's conduct included multiple occasions when he screamed at Dolores Sanchez ("Sanchez"), the manager of Nueva Vida Apartments, and residents of the complex, as well as "belligerent and aggressive behavior, threatening behavior."[9]  Plaintiff also "answer[ed] his apartment door while

---

[4]     Doc. 7, Pl.'s (Am.) Orig. Compl. p. 2

[5]     Id. p. 3.

[6]     Doc. 33-5, Ex. E to Def.'s Mot. for Summ. J., Aff. of Dolores Sanchez ("Sanchez") ¶ 2.

[7]     Id.

[8]     Id. ¶ 3; see also Doc. 33-2, Ex. B to Def.'s Mot. for Summ. J., Trial Tr. in Nueva Vida Apartments v. Rafiq, Harris Cty. Civ. Ct. at Law No. 3 Cause No. 1057438 (Held Feb. 17, 2016) pp. 10-16.

[9]     Doc. 33-5, Ex. E to Def.'s Mot. for Summ. J., Aff. of Sanchez ¶ 3; see also Doc. 33-2, Ex. B to Def.'s Mot. for Summ. J., Trial Tr. in Nueva Vida Apartments v. Rafiq, Harris Cty. Civ. Ct. at Law No. 3 Cause No. 1057438 (Held Feb. 17, 2016) pp. 10-16.

either naked or barely wrapped in a towel" and "barg[ed] into the management office demanding to be assisted before others in line."[10] On one occasion, Plaintiff raised his fist as though to strike Sanchez.[11]

On November 7, 2014, Nueva Vida Apartments hand-delivered a ten-day Notice of Proposed Termination.[12] Plaintiff did not respond to the notice within ten days, and Defendant hand-delivered a three-day Notice to Vacate, which detailed Plaintiff's lease violations, notified him of the termination of his lease, and allowed him three days to vacate the premises.[13] Plaintiff refused to vacate the premises.[14]

On December 11, 2014, Nueva Vida Apartments filed an eviction action in Harris County Justice Court.[15] The court held a trial on

---

[10]   Doc. 33-5, Ex. E to Def.'s Mot. for Summ. J., Aff. of Sanchez ¶ 3; see also Doc. 33-2, Ex. B to Def.'s Mot. for Summ. J., Trial Tr. in Nueva Vida Apartments v. Rafiq, Harris Cty. Civ. Ct. at Law No. 3 Cause No. 1057438 (Held Feb. 17, 2016) pp. 10-16.

[11]   Doc. 33-5, Ex. E to Def.'s Mot. for Summ. J., Aff. of Sanchez ¶ 3; see also Doc. 33-2, Ex. B to Def.'s Mot. for Summ. J., Trial Tr. in Nueva Vida Apartments v. Rafiq, Harris Cty. Civ. Ct. at Law No. 3 Cause No. 1057438 (Held Feb. 17, 2016) p. 13.

[12]   Doc. 33-5, Ex. E to Def.'s Mot. for Summ. J., Aff. of Sanchez ¶ 3.

[13]   Id.; see also Doc. 33-3, Ex. C to Def.'s Mot. for Summ. J., Orig. Compl. of Forcible Detainer in Nueva Vida Apartments v. Rafiq, Harris Cty. Justice Ct., NO. EV21C0048810 (Filed Dec. 11, 2014), Attach. 1, Notice Dated Nov. 18, 2014.

[14]   Doc. 33-5, Ex. E to Def.'s Mot. for Summ. J., Aff. of Sanchez ¶ 4.

[15]   Id.; see also Doc. 33-3, Ex. C to Def.'s Mot. for Summ. J., Orig. Compl. of Forcible Detainer in Nueva Vida Apartments v. Rafiq, Harris Cty. Justice Ct., NO. EV21C0048810 (Filed Dec. 11, 2014); Doc. 14, Def.'s Mot. to Remand pp. 1-2.

December 29, 2014, and entered judgment in favor of Nueva Vida Apartments.[16] Plaintiff appealed the decision to Harris County Civil Court at Law Number Three.[17] Pursuant to Texas Rule of Civil Procedure 11,[18] the parties entered an agreement in March 2015 to resolve the eviction action.[19] Nueva Vida Apartments agreed to postpone the trial and ultimately dismiss it in exchange for Plaintiff's promises to vacate the apartment by August 31, 2015, and to refrain from engaging in prohibited conduct while he remained at Nueva Vida Apartments.[20]

On April 6, 2015, Plaintiff filed a complaint with HUD that was handled by Texas Workforce Commission, Civil Rights Division ("TWCCRD"), alleging that Defendant and others illegally

---

[16] See Doc. 7, Pl.'s (Am.) Orig. Compl. p. 8; Doc. 14, Def.'s Mot. to Remand p. 2.

[17] See Doc. 14, Def.'s Mot. to Remand p. 2.

[18] Texas Rule of Civil Procedure 11 states: "Unless otherwise provided in these rules, no agreement between attorneys or parties touching any suit pending will be enforced unless it be in writing, signed and filed with the papers as part of the record, or unless it be made in open court and entered of record."

[19] Doc. 33-4, Ex. D to Def.'s Mot. for Summ. J., Rule 11 Agreement; see also Doc. 14, Def.'s Mot. to Remand p. 2; Doc. 33-2, Ex. B to Def.'s Mot. for Summ. J., Trial Tr. in Nueva Vida Apartments v. Rafiq, Harris Cty. Civ. Ct. at Law No. 3 Cause No. 1057438 (Held Feb. 17, 2016) pp. 4-5; Doc. 33-5, Ex. E to Def.'s Mot. for Summ. J., Aff. of Sanchez ¶ 4.
Although Plaintiff's attorney at the time signed the agreement, Plaintiff refused to sign the agreement. See Doc. 33-4, Ex. D to Def.'s Mot. for Summ. J., Rule 11 Agreement p. 4; Doc. 33-5, Ex. E to Def.'s Mot. for Summ. J., Aff. of Sanchez ¶ 4.

[20] Doc. 33-4, Ex. D to Def.'s Mot. for Summ. J., Rule 11 Agreement; see also Doc. 14, Def.'s Mot. to Remand p. 2; Doc. 33-2, Ex. B to Def.'s Mot. for Summ. J., Trial Tr. in Nueva Vida Apartments v. Rafiq, Harris Cty. Civ. Ct. at Law No. 3 Cause No. 1057438 (Held Feb. 17, 2016) pp. 4-5; Doc. 33-5, Ex. E to Def.'s Mot. for Summ. J., Aff. of Sanchez ¶ 4.

discriminated against Plaintiff based on race, national origin, and disability.[21] Plaintiff claimed that he was subjected to different terms and conditions of rental, discriminatory refusal to rent and harassment.[22] Among other complaints, Plaintiff alleged:

> Ms. Sanchez has posted a sign outside of the property which limits the size of vehicles allowed onto the property. The sign is confusing, as it prohibits vehicles larger than an F-350 to enter the property. This sign essentially makes it difficult for the METROLift to enter the property to pick me up. I am a person with disabilities and can not drive. I require the services of METROLift. This policy interferes with my gaining transportation services.[23]

In response to the allegation about METROLift, Defendant agreed that a sign had been erected near the entry gate to prohibit large delivery trucks from entering the property because of incidents in which the trucks hit the covered drive but that conversations with METRO supervisors clarified that METROLift was not prohibited from entering the property.[24] Defendant also submitted to TWCCRD photographic evidence of Plaintiff getting on a METROLift under the covered drive.[25] After investigation, TWCCRD found no reasonable cause to believe that Defendant had discriminated against Plaintiff on the basis of race, national

---

[21] See Doc. 33-1, Ex. A to Def.'s Mot. for Summ. J., TWCCRD's Determination of No Reasonable Cause p. 1.

[22] Id. p. 2.

[23] Id. p. 3.

[24] Id. pp. 3-4.

[25] Id. p. 5.

origin, disability, or religion.[26]

On August 31, 2015, Plaintiff did not vacate the apartment, opting instead to remove the eviction proceeding to this court.[27]

### B. Procedural Background

Plaintiff filed this action on July 30, 2015.[28] In his complaint, Plaintiff alleged that, beginning in May 2014 and continuing through the date on which he filed this action, Defendants "continued to abuse the Plaintiff" and "exploited Plaintiff's disabilities."[29] Plaintiff further alleged that Defendant prohibited METROLift vans for the disabled from entering the property to pick up Plaintiff.[30] Plaintiff said that, as a result, he once fell in a ditch outside the apartment complex.[31]

Plaintiff alleged that he first filed a discrimination complaint with HUD in May 2014 and more in June and September or October and that, when the HUD representative questioned Defendant about Plaintiff's complaints, Defendant stated that it would

---

[26] Id. p. 9.

[27] See Doc. 14, Def.'s Mot. to Remand p. 2; Doc. 33-2, Ex. B to Def.'s Mot. for Summ. J., Trial Tr. in Nueva Vida Apartments v. Rafiq, Harris Cty. Civ. Ct. at Law No. 3 Cause No. 1057438 (Held Feb. 17, 2016) p. 6; Doc. 33-5, Ex. E to Def.'s Mot. for Summ. J., Aff. of Sanchez ¶ 4.

[28] See Doc. 1, Pl.'s Orig. Compl.

[29] Doc. 7, Pl.'s (Am.) Orig. Compl. pp. 1, 2.

[30] See id. p. 7.

[31] See id.

terminate Plaintiff's lease and evict him.[32] According to Plaintiff's complaint, in June and September 2014, Defendant began harassing Plaintiff by delivering letters that threatened eviction and then initiated an eviction proceeding.[33]

When Plaintiff initially filed the complaint in this action, he also filed a motion for a temporary restraining order ("TRO") to prevent his eviction.[34] On August 28, 2015, Plaintiff removed the state-court eviction proceeding from the Harris County Civil Court at Law Number Three to this court.[35] Within a week of removal, Defendant filed a motion to remand.[36] On September 4, 2015, all original defendants jointly filed an answer to Plaintiff's complaint and included motions to dismiss and for a more definite statement.[37]

On September 16, 2015, the court held a hearing on Plaintiff's

---

[32] Id. p. 6. The only discrimination complaint located by the court in the record is dated April 4, 2015, and carries the same case number as TWCCRD determination. See Doc. 19, Pl.'s Mot. for Continuance/Demand for Ct.-Appointed Att'y, Pl.'s Preliminary (1st) Ans. to Def.'s Mot. to Remand & Pl.'s Mot. for Recusal, Ex. F, Housing Discrimination Compl. Signed Apr. 4, 2015 (recounting his grievances); Id., Ex. G, Letter from HUD to Pl. Dated Mar. 26, 2015 (enclosing a copy of his discrimination complaint for his signature); Doc. 33-1, Ex. A to Def.'s Mot. for Summ. J., TWCCRD's Determination of Reasonable Cause (referring to the same case number).

[33] Doc. 7, Pl.'s (Am.) Orig. Compl. p. 7.

[34] See Doc. 1, Pl.'s Orig. Compl.; Doc. 2, Pl.'s Mot. for TRO.

[35] See Doc. 11, Pl.'s Notice of Removal.

[36] See Doc. 14, Def.'s Mot. to Remand.

[37] See Doc. 15, Ans. & Mots. to Dismiss & for a More Definite Statement.

TRO motion.[38] After some discussion, the court continued the hearing at Plaintiff's request and issued an order the following day.[39] The order stated that the Plaintiff's complaint did not contain sufficient detail from which the court could determine whether the exercise of subject matter jurisdiction was proper.[40] The court ordered Plaintiff to file an amended complaint that listed each act of each Defendant that Plaintiff thought stated a claim for discrimination under the FHA.[41] The court explained that it would not set a hearing on the TRO motion until it made the determination on subject matter jurisdiction.[42]

On September 28, 2015, Plaintiff filed his so-called Motion for Continuance/Demand for Court-Appointed U.S. Attorney, Plaintiff's Preliminary (First) Answer to Defendant's Motion to Remand and Plaintiff's Motion for Recusal.[43] A few days later, the court granted the motion for continuance and denied the motions for appointment of counsel and for recusal.[44] In connection therewith, the court also reiterated its prior order that Plaintiff replead

---

[38] See Doc. 17, Min. Entry Dated Sept. 16, 2015.

[39] See id.; Doc. 18, Ord. Dated Sept. 17, 2015.

[40] See Doc. 18, Ord. Dated Sept. 17, 2015 p. 1.

[41] Id. p. 6.

[42] Id.

[43] See Doc. 19, Pl.'s Mot. for Continuance/Demand for Ct.-Appointed Att'y, Pl.'s Preliminary (1st) Ans. to Def.'s Mot. to Remand & Pl.'s Mot. for Recusal.

[44] See Doc. 21, Ord. Dated Oct. 5, 2015.

the allegations in his complaint, allowing him until October 19, 2015, to do so.[45] On October 19, 2015, Plaintiff filed his response to Defendant's motion to remand.[46] Plaintiff did not replead his complaint as ordered by the court.

On December 7, 2015, this court entered a memorandum recommending that Plaintiff's motion for a TRO be denied, Defendant's motion to remand be granted, and the motion to dismiss be granted in part and denied in part, among other rulings.[47] The memorandum and recommendation was adopted.[48] As a result, two of Plaintiff's claims against Defendant under the FHA are all that remain in this action: (1) Defendant prohibited METROLift vans from entering the apartment property and thereby prevented Plaintiff from accessing public transportation for the disabled; and (2) Defendant retaliated against Plaintiff by instituting eviction proceedings in response to Plaintiff's filing of discrimination complaints with HUD.[49] All other defendants were dismissed.[50]

On February 17, 2016, the Harris County Court of Law Number

---

[45] See id. p. 2.

[46] See Doc. 22, Pl.'s Brief Resp. to Def.'s Mot. to Remand, Pl.'s Demand for Ct.-Appointed Att'y, Pl.'s Resp. to Amend his Orig. Pet./Compl., Considerations for Mag. J.

[47] See Doc. 23, Mem. & Recommendation.

[48] See Doc. 27, Ord. Dated Dec. 30, 2015.

[49] See id.; Doc. 23, Mem. & Recommendation.

[50] See Doc. 23, Mem. & Recommendation; Doc. 27, Ord. Dated Dec. 30, 2015.

Three held a trial in the eviction action on remand from the court.[51] Plaintiff did not attend and was not represented by counsel.[52] However, Plaintiff still lived at Nueva Vida Apartments at that time.[53] After hearing the testimony of Sanchez, the court found in favor of Nueva Vida Apartments on the breach of the lease and eviction issues.[54]

On August 12, 2016, Defendant filed the pending motion for summary judgment on these remaining two claims.[55] Plaintiff did not respond to the motion.[56]

## II. Summary Judgment Standard

Summary judgment is warranted when the evidence reveals that no genuine dispute exists on any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Stauffer v. Gearhart, 741 F.3d 574, 581 (5th Cir. 2014). A material fact is a

---

[51] See Doc. 33-2, Ex. B to Def.'s Mot. for Summ. J., Trial Tr. in Nueva Vida Apartments v. Rafiq, Harris Cty. Civ. Ct. at Law No. 3 Cause No. 1057438 (Held Feb. 17, 2016).

[52] See id.

[53] See id. pp. 6-7.

[54] See id. p. 22.

[55] See Doc. 33, Def.'s Mot. for Summ. J.

[56] The Local Rules for the Southern District of Texas state that "[f]ailure to respond [to a motion] will be taken as a representation of no opposition." L.R. 7.4. The non-moving party has twenty-one days to file a response before the lack of response is considered a lack of opposition. See L.R. 7.3, 7.4. Even if a party fails to oppose a dispositive motion, the court will not grant the motion without carefully considering the movant's arguments. See Hibernia Nat'l Bank v. Administracion Cent. Sociedad Anonima, 776 F.2d 1277, 1279 (5th Cir. 1985).

fact that is identified by applicable substantive law as critical to the outcome of the suit. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Ameristar Jet Charter, Inc. v. Signal Composites, Inc., 271 F.3d 624, 626 (5th Cir. 2001). To be genuine, the dispute regarding a material fact must be supported by evidence such that a reasonable jury could resolve the issue in favor of either party. See Royal v. CCC & R Tres Arboles, L.L.C., 736 F.3d 396, 400 (5th Cir. 2013)(quoting Anderson, 477 U.S. at 248).

The movant must inform the court of the basis for the summary judgment motion and must point to relevant excerpts from pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of genuine factual issues. Celotex Corp., 477 U.S. at 323; Topalian v. Ehrman, 954 F.2d 1125, 1131 (1992). If the moving party carries its burden, the nonmovant may not rest on the allegations or denials in his pleading but must respond with evidence showing a genuine factual dispute. Stauffer, 741 F.3d at 581 (citing Hathaway v. Bazany, 507 F.3d 312, 319 (5th Cir. 2007)).

### III.  Discussion

Based on the following evidence, Defendant seeks summary judgment in its favor on the only two remaining claims:  (1) the eviction complaint filed on January 9, 2015; (2) the parties' agreement in the eviction proceedings; (3) TWCCRD's findings with regard to Plaintiff's April 2015 complaint of discrimination; and

(4) the sworn testimony of Sanchez both in the eviction suit and by affidavit. Plaintiff offered no evidence to contradict Defendant's exhibits.

Among other protections, the FHA prohibits discrimination in the sale or rental of a dwelling because of handicap and discrimination "in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with [a] dwelling" because of handicap. See 42 U.S.C. § 3604(f). This includes refusing "to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling." 42 U.S.C. § 3604(f)(3)(B).

In its prior memorandum, the court found that Plaintiff's allegation that Defendant prevented Plaintiff from accessing public transportation for the disabled arguably stated a discrimination claim under the FHA for discrimination in the provision of services based on disability.

In her affidavit, Sanchez averred:

> Finally, Nueva Vida never denied access to Metrolift or otherwise refused to accommodate [Plaintiff] with respect to any alleged disability. A sign was erected near the community entry gate that prohibited larger delivery trucks from entering the property because such trucks had repeatedly struck and damaged the covered drive. The sign had nothing to do with Metrolift, disabled residents, generally, or [Plaintiff], in particular. In discussing the signage with Metrolift supervisors at [Plaintiff's] request, Nueva Vida management specifically

12

> communicated that Metrolift . . . was permitted to enter the property under the covered drive. There was never any issue with [Plaintiff's] access to and use of Metrolift. Many of the community residents rely upon Metrolift for transportation[;] the refusal to permit Metrolift access . . . would have negatively affected the access of many of our residents and would have been untenable to many more residents than [Plaintiff].[57]

In addition to testifying she never prevented METROLift from entering the apartment premises, Sanchez stated in the eviction trial that she had witnessed and had taken photographs of Plaintiff waiting for and boarding the METROLift under the property's covered drive.[58]

The allegations in Plaintiff's complaint are insufficient to carry the day at summary judgment. See Stauffer, 741 F.3d at 581. Plaintiff submitted no evidence to the effect that Defendant interfered with Plaintiff's access to METROLift within the apartment community. Although an exterior sign at the apartment initially confused METROLift drivers, Sanchez accommodated Plaintiff's request that she communicate to METROLift supervisors that the sign did not apply to METROLift vehicles.

Plaintiff failed to raise a fact question on the FHA discrimination claim.

---

[57] Doc. 33-5, Ex. E to Def.'s Mot. for Summ. J., Aff. of Sanchez ¶ 6; see also Doc. 33-2, Ex. B to Def.'s Mot. for Summ. J., Trial Tr. in Nueva Vida Apartments v. Rafiq, Harris Cty. Civ. Ct. at Law No. 3 Cause No. 1057438 (Held Feb. 17, 2016) pp. 20-21.

[58] Doc. 33-2, Ex. B to Def.'s Mot. for Summ. J., Trial Tr. in Nueva Vida Apartments v. Rafiq, Harris Cty. Civ. Ct. at Law No. 3 Cause No. 1057438 (Held Feb. 17, 2016) p. 21.

It is also unlawful to retaliate against an individual on account of his exercising any right granted by the FHA. See 42 U.S.C. § 3617. Retaliation claims under the FHA are analyzed according to the same standards as retaliation claims under Title VII of the Civil Rights Act of 1964[59] ("Title VII"). See Chavez v. Aber, 122 F. Supp.3d 581, 599 (W.D. Tex. 2015)(quoting Tex. v. Crest Asset Mgmt., Inc., 85 F. Supp.2d 722, 733 (S.D. Tex. 2000)). A Title VII retaliation plaintiff must prove: (1) that he participated in a protected activity; (2) that he suffered an adverse action; and (3) that there was a causal connection between the protected activity and the adverse action. Buckhanan v. Shinseki, No. 15-60643, 2016 WL 7009093, at *2 (5th Cir. Nov. 30, 2016)(unpublished).

In the prior memorandum, this court found that Plaintiff avoided dismissal of the retaliation claim based solely on his allegations that he filed his first housing discrimination complaint with HUD in May or June 2014 and that Defendant stated in response that it would terminate Plaintiff's lease and evict him.

Here, Defendant submitted evidence that Plaintiff filed a discrimination complaint with HUD/TWCCRD in April 6, 2015. By that time, the eviction proceeding was well underway.

The only evidence in the record relates to the April 2015 complaint of discrimination, which clearly postdates the adverse

---

[59] 42 U.S.C. §§ 2000e-2000e-17.


action about which Plaintiff complains. Absent any evidence that Plaintiff engaged in a protected activity prior to the filing of the eviction action, he cannot show a causal connection between the filing of the discrimination complaint and his eviction.

Plaintiff failed to raise a fact question on the FHA retaliation claim.

### III.  Conclusion

Based on the foregoing, the court **RECOMMENDS** that Defendant's Motion for Summary Judgment be **GRANTED**.

The Clerk shall send copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections thereto pursuant to Rule 72(b) and General Order 2002-13. Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

The original of any written objections shall be filed with the United States District Clerk electronically. Copies of such objections shall be mailed to opposing parties and to the chambers of the undersigned, 515 Rusk, Suite 7019, Houston, Texas 77002.

**SIGNED** in Houston, Texas, this 3rd day of January, 2016.

_____
U.S. MAGISTRATE JUDGE